**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Philip Calleja,<br><br>         Plaintiff,<br><br>v.<br><br>Sean Cannon and Cannon Law Firm, PLLC,<br><br>         Defendants. | No. CV-15-01120-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiff's Motion for Summary Judgment on FDCPA[1] Claims (Doc. 39).

**I.    LEGAL STANDARD**

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial. Summary judgment should be granted if the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant has the burden of showing the absence of genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant

---

[1] FDCPA refers to the "Fair Debt Collection Practices Act."

shows an absence of evidence to support the nonmoving party's case, the burden shifts to the party resisting the motion. The party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial" and may not rest upon the pleadings. *Anderson*, 477 U.S. at 256. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, must not weigh the evidence or assess its credibility, and must draw all justifiable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255.

## II.     STATUTE OF LIMITATIONS

FDCPA provides jurisdiction to enforce any liability created by FDCPA "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiff filed this action on June 8, 2015.

Plaintiff contends that Defendants waived any statute of limitations defense by failing to identify it as an affirmative defense in their Answer. However, Plaintiff raised the issue of the one-year FDCPA limitations period in his Complaint by alleging that Defendants' initial FDCPA violations began more than one year before the commencement of this action but the collections actions were ongoing and continuous in nature and should be considered one continuous FDCPA violation. (Doc. 37 at 6, ¶ 31.) The Complaint further alleges, "Alternatively, Defendants violated the FDCPA by numerous, separate violations within the last year before this action was filed." (*Id.*) In their Answer, Defendants denied Plaintiff's allegations regarding the FDCPA limitations period. (Doc. 38 at 3, ¶ 31.) Thus, the statute of limitations defense was adequately pled.

Plaintiff also contends that the alleged violations predating the one-year limitations period constitute a continuing pattern and course of conduct that continued into the last year before this action was filed. No controlling authority has been cited to

establish that a continuing violation theory applies to a claim under FDCPA. Plaintiff cites only *Joseph v. J.J. MacInyre Companies*, 281 F. Supp. 2d 1156 (N.D. Cal. 2003), which applied the continuing violation theory to a FDCPA claim for repeated harassing phone calls from a debt collection agency. The evidence showed more than 200 calls during a nineteenth-month period, approximately 75 of which were within the limitations period. The district court concluded that application of the continuing violation doctrine to these facts was logical and consistent with the FDCPA's broad remedial purpose. Alternatively, the district court concluded that even if the statute of limitations were to bar liability for conduct outside the limitations period, evidence of pre-limitations period calls likely would be admissible to show background and to establish a foundation for other evidence. The decision in *Joseph* denied summary judgment for the defendant and did not decide whether damages would be based on a single course of conduct or multiple violations.

Here, Plaintiff claims that Defendants misrepresented the amount of his debt in three separate emails, each demanding payment of, and attempting to collect, a debt he did not owe. Two of those emails were sent within the one-year limitations period. It makes little practical difference whether Defendants' actions are considered a single course of conduct, *i.e.*, one FDCPA violation continuing past June 8, 2014, or two violations within the one-year limitations period. Therefore, evidence of Plaintiff's payments and Defendants' records before June 8, 2014, will be considered in determining whether the two emails sent after June 8, 2014, misrepresented Plaintiff's debt, and Defendants will not be held liable for FDCPA violations that occurred before June 8, 2014.

### III. MATERIAL FACTS BASED ON UNDISPUTED EVIDENCE

Plaintiff Philip Calleja is an owner of a unit within the La Fuente condominium. Defendant Sean Cannon is an Arizona attorney and the owner of Defendant Cannon Law Firm, PLLC.

1 La Fuente is a condominium subject to a Declaration of Horizontal Property Regime and Covenants, Conditions, Restrictions and Easements ("Declaration"). The Declaration provides for the formation of an association of the owners of units within La Fuente ("Association"), which is responsible for the maintenance, repairs, administration, and operation of the common elements and assessments for expenses, among other things. By agreeing to the Declaration, owners agree to pay their proportion and share of the expenses of the administration and operation of the common elements "and any other expenses incurred or budgeted, or reserved for future expenses established, in conformance with the Declaration and the Articles and By-Laws." The Declaration requires the Association to levy against each unit and its owner an assessment for the common expenses, which "together with interest thereon and the cost of collection thereof, including reasonable attorney's fees shall, until paid, be a charge against and a continuing lien" upon the unit and against the owner of such unit.

The Association operates through a management company, which applies the assessment to a unit's account on the first of each month. Before January 2013, the Association's policy was to assess a late fee of $15.00 if an assessment was not paid by the thirtieth day of the month. Beginning in January 2013, the Association's policy was to assess a late fee of $15.00 if an assessment was not paid by the fifteenth of the month.

From August 2012 through December 2014, Plaintiff's monthly assessment was $289.19. From January 2015 through December 2015, Plaintiff's monthly assessment was $300.00. From 2012 through 2015, Plaintiff paid his monthly assessments using Chase Bank's online service. Each check was issued by Chase Bank payable to "La Fuente in care of CID Management." The payment confirmation for each month shows the check number, the amount of the check, and the date the check was sent by Chase Bank to the payee.

<u>July 2012 – August 2013</u>. The Association's records for Plaintiff's unit show that the account had a balance of $0.00 as of July 27, 2012, but on July 30, 2012, the Association charged a $15.00 late fee for Plaintiff's June payment. On September 17,

2012, the Association charged Plaintiff's account a $45.00 administrative fee because the August 2012 payment was two months late.[2] On September 28, 2012, Plaintiff made a payment of $289.19 and a payment of $304.19. As of September 28, 2012, the Association's records indicate that Plaintiff's account had a balance of $45.00.

For October 2012 through August 2013, Plaintiff made eleven payments of $289.19 each. Each of these payments was sent by the thirtieth day of the month, but not by the fifteenth. The Association charged Plaintiff a $15.00 late fee for January, February, March, June, and August 2013. On July 1, 2013, the Association credited Plaintiff's account $15.00 as an "expense adjustment." As of August 29, 2013, the Association's records indicate that Plaintiff's account had a balance of $105.00 (consisting of $60.00 for late fees and $45.00 for the administrative charge).

<u>September 2013 – September 2014</u>. Plaintiff did not send a payment in September 2013. The Association's records indicate that on October 16, 2013, Plaintiff's account was referred to Defendants for collection (although Plaintiff was not notified until November 22, 2013). Plaintiff sent a payment of $289.19 to the Association on October 25, 2013. Beginning with the October 25, 2013 payment, Plaintiff's checks were deposited into one of Defendants' bank accounts.

The Association's records show Plaintiff's account balance as $1,002.57 on November 18, 2013, which consisted of unpaid assessments for September, October, and November 2013; late fees for October and November; and a previous balance of $105.00 for late fees and the administrative charge. The November 18, 2013 balance of $1,002.57 did not include credit for Plaintiff's October 25, 2013 payment.

On November 21, 2013, Plaintiff sent another payment of $289.19 to the Association.

On November 22, 2013, Defendants mailed a letter to Plaintiff stating that the Association had transferred Plaintiff's account to Defendants for collection, and the

---

[2] No one has asserted that the Association has a policy regarding imposing administrative charges.

- 5 -

amount due was $1,457.57. The letter urged Plaintiff "to resolve this matter rather than cause yourself to incur additional attorney fees in the collection of this secured debt." Defendants' records show that on November 18, 2013, Plaintiff's account balance was $1,002.57, the same balance shown in the Association's records. Defendants' records show that on November 20, 2013, a legal fee of $455.00 was added, which increased the account balance to $1,457.57. Defendants' records show that on November 22, 2013, a legal fee of $70.00 was added, which further increased the account balance to $1,527.57. A different version of Defendants' records show an account balance of $1,457.57 on November 22, 2013, and no additional fee of $70.00. Regardless of these inconsistencies, the November 22, 2013 letter demanded an amount that included legal fees and did not include receipt of Plaintiff's October 25, 2013 payment.

Upon receiving the November 22, 2013 demand letter, Plaintiff disputed the amount of the debt and exchanged correspondence with Defendants regarding Plaintiff's account balance. Among other things, Plaintiff asserted that he had not received notice that the Association's policy had changed in January 2013 from charging a late fee on the thirtieth day of the month to charging a late fee on the fifteenth day of the month. The Association contended that Plaintiff had not provided his current mailing address.

The November 22, 2013 letter directed Plaintiff to make all checks payable to the Cannon Law Firm and to mail them to the Cannon Law Firm. It stated that the Association would not accept payments on Plaintiff's account and would forward to the Cannon Law Firm any checks it received. Plaintiff continued to send checks to the Association, which forwarded them to Defendants. Defendants sometimes issued a check to the Association for part of Plaintiff's payment, sometimes sent Plaintiff's check back to Defendants, and sometimes did neither.

From October 25, 2013, through September 2014, nine of the eleven times Plaintiff sent the Association a check for $289.19, his account was credited only

$173.51.³  At least three of Plaintiff's payments that were only partially applied to Plaintiff's account were made after June 8, 2014.

The August 27, 2014 Email.  The Association's financial records show that on August 18, 2014, Plaintiff had a balance due of **$1,857.27**, which included a late fee for August 2014.  Defendants' records show that on August 18, 2014, Plaintiff had a balance due of **$1,764.19**, which included a late fee for August 2014 and $350.00 in legal fees incurred in August and September 2014.  Nevertheless, on August 27, 2014, Defendants sent an email to Plaintiff stating that the total amount Plaintiff owed to La Fuente was $2,406.70, comprised of **$2,131.46** in "delinquencies" and $275.24 in legal fees (after a reduction).

The Association's financial records show that it received a check from Plaintiff in the amount of $289.19 on August 22, 2014, and forwarded the check to Defendants the same day.  The Association's financial records show that no payment of $289.19 was applied to Plaintiff's account in August or September 2014 and that Plaintiff's account was credited $173.51 on September 11, 2014.

September 2014 – December 2014.  On September 17, October 17, and November 17, 2014, Chase Bank sent from Plaintiff's account to the Association a check in the amount of $289.19.  On December 17, 2014, Chase Bank sent to the Association a check in the amount of $300.00.  The Association's records do not record receipt of any of Plaintiff's checks during this period, but the Association's records and Defendants' records show each of the four payments was applied in full to Plaintiff's account.

January 2015 – April 2015.  On January 15, February 17, March 16, March 17, and April 17, 2015, Chase Bank sent from Plaintiff's account to the Association a check in the amount of $300.00.  Although it appears that the checks were mailed to the

---

³ Plaintiff's account was credited $173.5**7** for one of the nine payments.

- 7 -

Association, Defendants' records indicate that on January 15, 2015, they received the check mailed on January 15, 2015.[4]

Despite Defendants' apparent receipt of Plaintiff's January 2015 payment on January 15, 2015, the Association charged Plaintiff a $15.00 late fee on January 16, 2015. On January 24, 2015, Defendants requested an updated account balance from the Association. On January 27, 2015, the Association applied Plaintiff's January 15, 2015 payment. On January 28, 2015, both the Association's and Defendants' records show that $195.00 in late fees and the $45.00 administrative charge were waived. On January 28, 2015, the Association's records show that Plaintiff's account balance was $1,593.63, and Defendants' records show that Plaintiff's account balance was $1,663.63.

On February 17, 2015, Defendants' records show receipt of Plaintiff's check dated February 17, 2015. On February 24, 2015, the Association's records applied that payment. No late fee was charged.

On March 7, 2015, a representative of CID Management, the management company for La Fuente, sent an email to Plaintiff that stated his account balance was $1,814.44, including the March 2015 assessment, and that $285.00 of that amount represented late fees and administrative charges. The email said Plaintiff had already paid $1,041.12 of the $1,666.36 in attorney fees charged for collection services. As "a one-time gesture in order to get your account current," the representative offered to waive all the late fees and administrative charges, which would reduce the balance owed to $1,529.44 plus the remaining attorney fees of $625.24. Plaintiff did not accept the offer.

On March 16, 2015, Chase Bank sent check #370714295 in the amount of $300.00 from Plaintiff's account to the Association. It states, "FOR ASSESSMENT ONLY." On March 17, 2015, Chase Bank sent a different check (#370965730) in the amount of $300.00 from Plaintiff's account to the Association. It also states, "FOR ASSESSMENT ONLY."

---

[4] Defendants' records also indicate that on February 17, 2015, they received the check dated February 17, 2015.

- 8 -

The Association's records show two identical comments for March 23, 2015, both indicating that Plaintiff "sent in" check #5730 for $300.00, and the check was forwarded to Defendants. The Association's records do not show that either check was applied to Plaintiff's account, but Defendants' records show credit for both checks on April 17, 2015, leaving a balance owed of $1,798.38.

On April 27, 2015, Defendants requested an updated balance for collection from the Association and added $105.00 in legal fees to Plaintiff's account, increasing the balance on Defendants' records to $1,903.38. On May 1, 2015, the Association's records show a balance owed of $2,523.63, which included the assessment for May 2015 and did not include credit for the two payments Plaintiff made in March 2015. Defendants' attorney billing records state that on May 1, 2015, Defendants sent a letter to Plaintiff demanding payment of $2,523.63, but the letter was returned as undeliverable. On May 6, 2015, the Association credited Plaintiff's account for a $300.00 payment, which appears to be the check that Chase Bank sent on April 17, 2015.

The May 22, 2015 Email. On May 22, 2015, Defendants sent an email to Plaintiff stating that the total amount Plaintiff owed to La Fuente was $2,963.87, which was comprised of **$2,223.63** in "delinquencies" and $740.24 in legal fees. The Association's records show balance of **$2,223.63** on May 22, 2015, *without any credit for the two payments in March 2015*. Moreover, the Association's records did not credit Plaintiff for the total amount of his payments, only for the amounts Defendants paid to the Association (*e.g.*, $173.51 instead of $289.19). At the same time, Defendants' records show a balance of $2,078.38, which included legal fees and late fees and credit for the two March payments.

### IV. ANALYSIS

Plaintiff moves for summary judgment on Counts One (Violation of 15 U.S.C. § 1692e) and Two (Violation of 15 U.S.C. § 1692f) of the Complaint. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation

or means in connection with the collection of any debt." Among other things, it prohibits the false representation of "the character, amount, or legal status of any debt."

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." Among other things, it prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

As the movant, Plaintiff has the burden of showing the absence of genuine disputes of material fact. Count One requires Plaintiff to prove that Defendants falsely represented the amount of debt he owed. Count Two requires Plaintiff to prove that Defendants attempted to collect a debt that was not permitted by agreement or authorized by law. Plaintiff is entitled to summary judgment on both counts if he shows that either Defendants' August 27, 2014 email or Defendants' May 22, 2015 email misrepresented the amount of the debt he owed and that Defendants attempted to collect a debt greater than he owed. In addition to billing Plaintiff for incorrect amounts, Plaintiff also contends that Defendants violated FDCPA by charging and collecting unauthorized, unawarded, and excessive alleged legal fees out of Plaintiff's monthly assessments in violation of Arizona law.

### A. Defendants' August 27, 2014 Email Misrepresented Plaintiff's Debt.

It is undisputed that on August 27, 2014, Defendants sent an email to Plaintiff that stated Plaintiff owed a balance of $2,406.70, comprised of **$2,131.46** in "delinquencies" and $275.24 in legal fees (after a reduction). Assuming that on August 27, 2014, Defendants had not yet received Plaintiff's check dated August 15, 2014, which the Association mailed to Defendants on August 22, 2014, the total Plaintiff owed for unpaid assessments was $289.19 as of August 27, 2014. If "delinquencies" is interpreted to mean unpaid assessments, late fees, and the administrative charge, the total of Plaintiff's

"delinquencies" on August 27, 2014, was **$484.19, not $2,131.46**.[5] The discrepancy cannot be explained by the delay caused by Plaintiff mailing payment to the Association instead of directly to Defendants.

On August 27, 2014, the Association's records show Plaintiff owed a balance of **$1,857.27, not $2,131.46**. Further, the Association's records do not accurately state the amount Plaintiff owed on unpaid assessments and late fees as of August 27, 2014. The records show that Plaintiff's account was charged twelve monthly assessments for September 2013 through July 2014. During that period, $173.51 of each of six $289.19 payments was applied to Plaintiff's account, and $173.57 of one $289.19 payment was applied. Two payments were applied in full, and two were not applied at all. The Association's records show Plaintiff was charged $195.00 for late fees and the administrative charge before August 27, 2014. Therefore, the $1,857.27 balance shown in the Association's records overstated the total of Plaintiff's unpaid assessments, late fees, and the administrative charge, and Defendants' August 27, 2014 email demanded payment of even more than the Association's records showed.

On August 27, 2014, Defendants' records show Plaintiff owed a balance of **$1,764.19**, **not $2,131.46**. Defendants' records do not show application of only $173.51 or $173.57 of Plaintiff's payments of $289.19, and they show balances that include legal fees, late fees, and the administrative charge. Even including legal fees, Defendants' August 27, 2014 email demanded payment of more than their records showed.

**B.     Defendants' May 22, 2015 Email Misrepresented Plaintiff's Debt.**

It is undisputed that on May 22, 2015, Defendants sent an email to Plaintiff that stated Plaintiff owed a balance of $2,963.87, comprised of **$2,223.63** in "delinquencies" and $740.24 in legal fees. The amount demanded is the balance shown in the

---

[5] If Defendants had received Plaintiff's check dated August 15, 2014, on or before August 27, 2014, the total of Plaintiff's "delinquencies" would have been $195.00, not $2,131.46.

- 11 -

Association's records as of May 6, 2015, which do not apply all of Plaintiff's payments in full to unpaid assessments and late fees.

As found above, if "delinquencies" is interpreted to mean unpaid assessments, late fees, and the administrative charge, the total of Plaintiff's "delinquencies" on August 27, 2014, was $484.19. In the ten months of August 2014 through May 6, 2015, Plaintiff made ten payments in the exact amount of his monthly assessment, was charged $90 in late fees, and received a credit of $240 for late fees and the administrative charge. Therefore, the total of Plaintiff's "delinquencies" on May 6, 2015, was **$334.19**, **not $2,223.63**.

### C. Defendants Violated Arizona Law by Failing to Apply Plaintiff's Payments First to Unpaid Assessments.

Under the Arizona statutes governing condominium management,

> Notwithstanding any provision in the condominium documents or in any contract between the association and a management company, unless the member directs otherwise, **all payments received on a member's account shall be applied first to any unpaid assessments**, for unpaid charges for late payment of those assessments, for reasonable collection fees and for unpaid attorney fees and costs incurred with respect to those assessments, in that order, with any remaining amounts applied next to other unpaid fees, charges and monetary penalties or interest and late charges on any of those amounts.

A.R.S. § 33-1256(J) (emphasis added).

The amounts Defendants reported to Plaintiff as due were based on balances that included late fees and an administrative charge of $45.00. The Association's records show that from June 16, 2014, through April 23, 2015, Plaintiff's account was charged a late fee of $15.00 seven times. During that period, Plaintiff made payments of the exact amount of his monthly assessment and did not direct that his payments were to be paid to anything other than unpaid assessments. On January 28, 2015, the Association credited Plaintiff's account $195.00 for late fees and $45.00 for an administrative charge, but subsequently charged Plaintiff two late fees.

The amounts Defendants reported to Plaintiff as due also were based on the balances that included legal fees. The Association's records show that four times during the period of July through September 2014 Plaintiff's account was credited $173.51 instead of his full payment of $289.19. Defendants' records show that eight times during the period of August 2014 through May 2015 Plaintiff's account was charged legal fees. On March 7, 2015, the Association's property manager said in an email to Plaintiff that Plaintiff had already paid $1,041.12 of the $1,666.36 in attorney fees charged for collection services.

Between June 16, 2014, and May 6, 2015, Plaintiff sent the Association twelve payments of the exact amount of his monthly assessment. According to the Association's records, Plaintiff's account balance was $1,610.91 on June 16, 2014, and it was $2,223.63 on May 6, 2015. During that period, Plaintiff was charged $90.00 in late fees and credited $240.00 for late fees and the administrative charge. If every payment was applied entirely to unpaid assessments, Plaintiff's balance during the period would have decreased by $150.00, not increased by $612.72.

Plaintiff did not direct that his payments were to be paid to anything other than unpaid assessments. In fact, the two March 2015 checks stated "FOR ASSESSMENT ONLY." The two March 2015 checks are noted as received by the Association and forwarded to Defendants, but the Association's records show that these payments were not applied to Plaintiff's unpaid assessments in March, April, or May 2015. Although Defendants' records show receipt of the two checks, Defendants' trust account records show deposit of only one, and Defendants' billing records do not document receipt and disposition of either check. Moreover, Defendants relied on the Association's records and requested the "updated balance" from the Association on multiple occasions before demanding payment from Plaintiff.

Therefore, the evidence submitted on summary judgment establishes that all of Plaintiff's payments were not applied first to unpaid assessments even if limited to considering only payments made after June 8, 2014.

### D.  Defendants Attempted to Collect Payment for Legal Fees.

As shown above, Defendants' demands for payment on August 27, 2014, and May 22, 2015, included amounts in excess of unpaid assessments and late fees. Defendants' financial records show the following:  (1) before June 8, 2014, Defendants charged $945.00 to Plaintiff's account for legal fees; (2) after June 8, 2014, and before June 8, 2015,[6] Defendants charged $1,015.00 to Plaintiff's account for legal fees; (3) after June 8, 2015, Defendants did not charge Plaintiff's account for any legal fees; and (4) on December 31, 2015, Defendants credited $1,683.38 to Plaintiff's account for legal fees, which left a balance owed of $0.00.

Defendants' billing records show that before June 8, 2014, Defendants billed a total of $945.00 over eight time entries and noted receipt of "partial payment from owner" six times despite each of Plaintiff's checks being in the full amount of the monthly unpaid assessment. Defendants' billing records show that after June 8, 2014, and before June 8, 2015, Defendants billed Plaintiff's account for 2.9 hours of legal services rendered on twelve different days. After Plaintiff filed this lawsuit on June 8, 2015, Defendants' billing records noted that Defendants received payment from the owner each month, sent the payment for processing, and "$300.00 will be disbursed to the Association as soon as the owner's check clears."

On March 7, 2015, the Association's management company said Plaintiff had already paid $1,041.12 of the $1,666.36 in attorney fees charged for collection services. The Association's records show that many of Plaintiff's checks in the full amount of the monthly assessment were received by the Association and forwarded to Defendants, but Plaintiff's account was credited for only partial payment. Some of Plaintiff's payments were not applied to his account at all. Nevertheless, Defendants sought updated balances from the Association's records before making demands for payment by Plaintiff.

Defendants' assertions are inconsistent. They contend that every time Plaintiff sent a payment, 100% of that payment was applied to the unpaid assessments; the Board

---

[6] Plaintiff filed this lawsuit on June 8, 2015.

- 14 -

of the Association approved an hourly rate of $350.00 for legal fees; Defendants were permitted to assess legal fees on individual delinquent owners as a sanction; the Association paid Defendants based on the amount collected; and the Association paid all of Defendants' fees. Defendants withheld the same amount from nine of Plaintiff's checks, which indicates that Defendants expected to be paid based on the amount collected, *i.e.*, a contingency fee. Further, Defendants concede that at least nine times they deposited Plaintiff's checks into their trust account, wrote themselves a check for forty percent of the amount, *i.e.*, $115.68, and wrote a check to the Association for $173.51.

However, Defendants claim the Board of the Association approved an hourly rate of $350.00, argue the hourly rate is reasonable,[7] produced billing records with time entries, and produced an account record showing legal fees applied to Plaintiff's account that are based on hourly rates. Finally, Defendants' account record purports to show that on December 31, 2015, the Association paid all of the legal fees attributed to Plaintiff's account and brought Plaintiff's account balance to $0.00—as though Defendants could be relieved from FDCPA liability retroactively.

### E. Defendant Sean Cannon Is Personally Liable for FDCPA Violations.

Without citation to authority or elaboration, Defendants contend that because the Cannon Law Firm, PLLC, undertook to collect from Plaintiff, and Sean Cannon did not do so personally, "the Court should deny any FDCPA claims against Cannon personally, under agency and corporation law."

An individual may be held personally liable for violation of the FDCPA if (1) the individual qualifies as a debt collector and (2) the individual has taken an action that violates the FDCPA. *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 1000 (9th Cir. 2012). The FDCPA defines "debt collector" as "any person who uses any instrumentality of

---

[7] Regardless of whether the hourly rate is reasonable, Defendants' billing entries show they improperly charged legal fees for performing clerical work, such as opening a billing matters file, receiving payments, depositing payments, and receiving returned mail.

interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). An individual working for a corporation may independently qualify as a debt collector under the FDCPA. *Cruz*, 673 F.3d at 999.

In *Cruz*, the Ninth Circuit found that an individual had taken an action in violation of the FDCPA by signing a letter falsely claiming that the debt collection company was entitled to collect interest on the principal. *Id.* at 1000. Subjecting the sole member of an LLC to individual liability for FDCPA violations does not require piercing of the corporate veil. *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 437-38 (6th Cir. 2008).

Defendants admitted that at all times relevant to this action, they were acting as "debt collectors" within the meaning of the FDCPA. (Docs. 40, 47, ¶ 2.) Defendants assert that Sean Cannon is the owner of Cannon Law Firm, PLLC. Defendants submitted affidavits from Michael Doyle and Connor Doyle, which state, "La Fuente engages Cannon to collect its delinquent accounts," "approved his hourly legal rate," and "authorized Cannon to collect his reasonable attorney fees." Sean Cannon's affidavit states: "La Fuente engages *me* to collect its delinquent accounts"; "*I* have been an authorized agent of La Fuente since June, 2012"; and "Despite *my* simple demands, Calleja refused to send in payment to Cannon." (Doc. 45-6 at 2, emphasis added.) The Association's records document receipt of checks from Plaintiff and forwarding those checks to "Sean." Defendants do not dispute that Sean Cannon sent the emails dated August 27, 2014, and May 22, 2015, demanding payment from Plaintiff. These emails violated FDCPA. Because Defendant Sean Cannon took actions in violation of FDCPA, he is personally liable for violations of §§ 1692e and 1692f.

## V.    CONCLUSION

Defendants' evidence and undisputed evidence submitted by Plaintiff establish that on August 27, 2014, and May 22, 2015, Defendants misrepresented the character and

amount of Plaintiff's debt and attempted to collect amounts not permitted by Arizona law.  Defendants' records and the Association's records show that after June 8, 2014, Defendants did not apply 100% of Plaintiff's payments first to unpaid assessments, and they did not apply some of his payments at all.

The affidavits submitted by Defendants do not show the existence of genuine issues of material fact to be submitted to a jury.  For example, the affidavits assert that "La Fuente waived Calleja's late fees and paid Cannon's legal fees" and "100% of the amounts submitted by Calleja were allocated to his unpaid assessments."  These assertions are consistent with Defendants' financial records showing that on December 31, 2015, the Association paid the balance due on Plaintiff's account.[8]  But doing so on December 31, 2015, did not alter the fact that on August 27, 2014, and May 22, 2015, Defendants misrepresented the character and amount of Plaintiff's debt and attempted to collect amounts not permitted by Arizona law.  Other general assertions, such as "Payments were first applied to unpaid assessments" and "When Calleja would send a payment, 100% of that payment would be applied to the unpaid assessments," do not identify which payments they refer to and cannot be interpreted as referring to all payments without contradicting the records Defendants submitted.  Viewing the undisputed evidence in the light most favorable to Defendants, the Court concludes there are no triable fact issues regarding Counts One (Violation of 15 U.S.C. § 1692e) and Two (Violation of 15 U.S.C. § 1692f) of the Complaint.

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment on FDCPA Claims (Doc. 39) is granted.

/ / /

/ / /

/ / /

---

[8] However, the records show that Plaintiff did pay some late fees, which were not refunded or waived.

- 17 -

IT IS FURTHER ORDERED that a status conference is set for **February 17, 2017**, at **11:00 a.m.**

Dated this 25th day of January, 2017.

_____
Neil V. Wake
Senior United States District Judge